```
             UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF PUERTO RICO
```

Carlos A. Morales, et al.

    v.                                  NH Civil No. 05-ds-114-JD
                                                PR Civil No. 04-17560

Puerto Rico Department
of Education, et al.

                                  O R D E R

The plaintiffs, who are the parents of Veronica M. Morales Davila, filed suit on her behalf under the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act, the Civil Rights Act of 1964, 42 U.S.C. § 2000a, the Americans with Disabilities Act, 42 U.S.C. § 1983, and Puerto Rico law.  The plaintiffs alleged that the Puerto Rico Department of Education; Cesar Rey, Secretary of the Department; Elsie Rivas, Supervisor of the Department of Special Education, and Administrative Judge Carmen Beauchamp Gonzalez violated Veronica's right to an appropriate educational environment.  The defendants failed to file an answer to the amended complaint with a translated copy of the administrative record, as they had been ordered to do, and default was entered against them on March 14, 2006.  A hearing on damages was held on August 21, 2006, by video conference.[1]

---

[1]As is thoroughly explained in the court's previous orders, default was entered against the Department after it failed to

While this case was pending, the First Circuit Court of Appeals decided a similar case, Diaz-Fonseca v. Commonwealth of P.R., 451 F.3d 12 (1st Cir. 2006), which held that "[w]here the essence of the claim is one stated under the IDEA for denial of FAPE [free and appropriate public education], no greater remedies than those authorized under the IDEA are made available by recasting the claim as one brought under 42 U.S.C. § 1983, Title II of the ADA, or section 504 of the Rehabilitation Act." Id. at 19. The court also explained the limited remedies available in such cases. Id. at 31. On June 19, 2006, this court notified the parties that Diaz-Fonseca would provide the governing law as to the remedies available here.

The plaintiffs filed a designation of damages without any supporting information or detail to support their requests. Before the hearing, the court ordered the plaintiffs to provide

---

file an answer to the amended complaint along with a certified translation of the administrative record, as it had been ordered to do. Although the Department eventually filed an answer in an effort to have the default set aside, it never filed a certified translation of the administrative record, ignoring the court's orders that the translated transcript be filed. In fact, the Department challenged those orders, asserting that it was not obligated to provide a translated transcript and claiming a lack of resources to do so. As a result, the court concluded that the Department failed to show good cause to set aside the default. See Orders issued March 14, 2006; March 17, 2006; March 31, 2006; April 25, 2006; May 31, 2006; July 26, 2006; see also Diaz-Fonseca, 451 F.3d at 26.

certain information about the requested damages and ordered counsel to explore the possibilities of settling the case based on the information provided.  The court also ordered counsel to inform the court as to the status of their efforts to settle the case on or before August 15, 2006.  Only the plaintiffs' counsel complied with the court's order, stating that the plaintiffs had sent a written settlement demand to the defendants, before the court issued its order, and had received no response.  The plaintiffs' counsel represented that he had attempted to contact counsel for the Department to discuss settlement possibilities but was unsuccessful because the switchboard at the Puerto Rico Department of Justice never forwarded his calls to her.  The plaintiffs' counsel also represented that he had received no communication from the Department's counsel.

   Two days after the deadline, on Thursday, August 17, 2006, the Department's counsel moved for an additional ten days to explore settlement possibilities, while acknowledging that the plaintiffs' counsel had previously sent a settlement demand and had provided the supporting information, as had been required by the court.  The court denied the motion for additional time, due to the lack of previous settlement effort by the Department and the proximity of the hearing, which was scheduled for Monday morning, August 21.  At the hearing, the plaintiffs' counsel

informed the court that the Department's counsel had told him that morning there was no possibility of settling the case.

Brenda L. Davila, Veronica's mother, testified at the hearing about the items for which the plaintiffs seek reimbursement. The court informed the plaintiffs' counsel that additional supporting information was needed to support the request for attorneys's fees and costs. That information was filed after the hearing.

## Discussion

Veronica was diagnosed when she was seventeen months old with global developmental delay and has a history of central hypotonia (decreased muscle tone), language developmental disorder, sensory integration disorder, and attention deficit disorder. Her disabilities have affected Veronica's social conduct and development, her cognitive development, her attention level, her psychomotor development, and her sensory perceptions. Veronica's parents, Brenda Davila and Carlos A. Morales, sought a private educational placement and other services, which were initially denied by the Department of Education. The Department later agreed to Veronica's placement at Instituto Modelo de Ensenanza Individualizada ("IMEI"), beginning in August of 2005.

In this suit, the plaintiffs are seeking reimbursement of

4

$22,500 for the cost of school tuition at Centro de Intervencion Temprana, Inc., which Veronica attended between September of 2004 and May of 2005, $630 for psychological services, $160 for speech therapy, $2000 for services provided at IMEI, $3,536.69 for interest paid on a loan used to pay for school tuition, $130 for an occupational therapy evaluation, and $37,647.78 in attorneys' fees and costs.  The plaintiffs' claims against individual defendants were previously dismissed without prejudice, leaving only their IDEA claim against the Puerto Rico Department of Education.  The Department objects to some, but not all, of the reimbursements sought by the plaintiffs.

"In an IDEA-based suit like this one, monetary relief is limited to awards of compensatory education and equitable remedies that involve the payment of money, such as reimbursement to parents for expenses incurred on private educational services to which their child was later found to have been entitled." Diaz-Fonseca, 451 F.3d at 31 (internal quotation marks omitted). When a free and appropriate public education is not available, the responsible agency must reimburse parents for the cost of private school tuition.  Id.  Educational expenses include services related to educational needs in addition to school tuition.  Id.  Because relief under the IDEA is equitable and discretionary, the court considers a variety of factors such as

whether the amount of reimbursement sought is appropriate and reasonable.  Id.

A.  School Tuition

The Department objects to the plaintiffs' request for reimbursement of $22,500 in tuition because it was paid to a different school than the school alleged in the complaint.  In the amended complaint, the plaintiffs alleged that Veronica's parents paid tuition for her to attend IMEI, beginning in August of 2004, after the Department denied the plaintiffs' administrative claim for Veronica's placement there, along with other related services.  Brenda Davila testified at the hearing, however, that Veronica was enrolled at Centro de Intervencion Temprana, Inc., from August of 2004 to May of 2005.  The plaintiffs' counsel stated that the complaint mistakenly alleged that Veronica attended IMEI during that time when she actually was enrolled at Centro de Intervencion Temprana, Inc.  The court is satisfied with the explanation provided by the plaintiffs.

Davila testified that Veronica attended a full-time school program at Centro.  She further testified that she and Veronica's father paid the cost of tuition in the amount of $2500 each month for a total of $22,500, and that the Department has not reimbursed them.  Copies of cancelled checks made out to Centro

in the amount of $2500, a letter from Centro stating the tuition of $22,500, and other financial records support Davila's testimony that the plaintiffs paid $22,500 in tuition to Centro. The Department does not challenge either the amount of tuition paid or the program provided to Veronica at Centro.

Based on the record presented, the tuition paid for Veronica to attend Centro is compensable under the IDEA, and the plaintiffs are entitled to reimbursement from the Department.

B. Psychological Services

The plaintiffs seek reimbursement of $630 for the cost of six psychological evaluations of Veronica by Dr. Angeles J. Acosta. The Department objects to reimbursement on the ground that the same services were available to Veronica from the Department. Davila testified, however, that Dr. Acosta is a well-known psychologist in Puerto Rico with thirty years of experience in treating children. She also testified that the Department never offered any psychological services or provided any assistance in finding a psychologist to evaluate Veronica. Davila further testified that the Department followed Dr. Acosta's recommendations. Although counsel for the Department questioned Davila about whether the Department offered psychological services for Veronica, the Department did not then

provide and has not since provided any evidence to contradict Davila's testimony that no services were offered.  Therefore, the services provided by Dr. Acosta were related to Veronica's education and were not available from the Department.

The plaintiffs submitted evidence of the charges for Dr. Acosta's services and of the payments made for those services. Davila testified that the Department has never reimbursed her for those costs.  The cancelled checks show payments to Dr. Acosta of $675, although the plaintiffs seek reimbursement for only $630. The Department does not challenge the amount the plaintiffs seek in reimbursement.  Therefore, the plaintiffs are entitled to $630 as reimbursement for psychological services provided to Veronica by Dr. Acosta.

C.  Speech Therapy

The Department does not challenge the plaintiffs' request for $160 as reimbursement for Veronica's speech therapy. Therefore, that amount is allowed.

D.  Services at IMEI

The plaintiffs request reimbursement of $2000 for services provided to Veronica at IMEI during the summer of 2005.  The Department objected to that request because there was

insufficient information about what services were provided. Davila testified at the hearing that Veronica attended the program because IMEI recommended it so that she could be evaluated and have an opportunity to adjust to that educational environment before she was enrolled as a full-time student. The summer program included recreation and classes. Davila testified and provided a receipt from IMEI to show that she paid $2000 for the summer program and that the Department had not reimbursed her for that cost.

Based on Davila's testimony, the court is satisfied that the services provided at IMEI in the summer of 2005 were related to Veronica's educational needs. Therefore, the Department shall reimburse the plaintiffs for the cost of that program in the amount of $2000.

E.  Interest Paid on Loan

In order to finance the cost of Veronica's tuition at Centro, Davila took out a personal loan from Caribe Federal Credit Union. She repaid the loan on April 6, 2006, which payment included interest in the amount of $3,536.69. The plaintiffs request reimbursement from the Department for the interest paid on the loan. The Department does not object to that request, and therefore, it is granted.

F.  Occupational Therapy Evaluation

Veronica was evaluated at Clinica de Integracion Sensorial by Jessica Ortiz on July 20, 2006.[2]  Davila testified at the hearing that IMEI required both an occupational therapy evaluation and a speech therapy evaluation to update Veronica's file, when IMEI realized that her file was not current.  Davila also testified that IMEI told her that the Department would not pay for the evaluations because they should have been done before Veronica was enrolled at IMEI.  Davila further testified that the evaluations were not done as soon as IMEI requested them because she could not afford to pay for them until later.

The Department did not object to reimbursement for the cost of the speech therapy evaluation.  The record is not clear as to whether the Department objects to reimbursement for the occupational therapy evaluation, and if so, on what basis.  From the questioning at the hearing, it appears that the Department is critical of Davila for not asking the Department directly to pay for the occupational therapy evaluation.  As Davila testified, however, once Veronica was enrolled at IMEI and the Department was paying for her tuition, the school handled all communications

---

[2]Although the notice from Clinica is dated July 20, 2005, Davila testified that the evaluation was done on July 20, 2006, and her receipt for payment is also dated July 20, 2006.

with the Department on her behalf.

Therefore, the Department shall reimburse the plaintiffs for the cost of the occupational therapy evaluation in the amount of $130.

G.  Attorneys' Fees

The plaintiffs request a total of $37,647.78 for attorneys' fees, expenses, and costs.  The Department does not object to the request and instead left this matter to the court's discretion.

"The [IDEA] provides that a court 'may award reasonable attorneys' fees as part of the costs' to parents who prevail in an action brought under the Act."  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 126 S. Ct. 2455, 2457 (2006) (quoting 20 U.S.C. § 1415(i)(3)(B)).  That provision in the IDEA "is to be interpreted consistently with Supreme Court law and other fee-shifting statutes."  Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 14 (1st Cir. 2003).  The common calculation used to determine reasonable attorneys' fees is the lodestar method, "in which the number of hours reasonably spent by the attorneys on the case is multiplied by a reasonable hourly rate."  Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 34 (1st Cir. 2002); see also A.R. v. N.Y. City Dep't of Educ., 407 F.3d 65, 79 (2d Cir. 2005).  To calculate a fee award, the court

begins with the attorneys' contemporaneous billing records but then must "winnow out excessive hours, time spent tilting at windmills, and the like."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001).

"Fees awarded under [the IDEA] shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  The plaintiffs' attorneys are from the firm of Delgado & Fernandez, LLP, in San Juan, Puerto Rico.  Attorney Alfredo Fernandez Martinez was the supervising attorney for the case and billed his time at an hourly rate of $200.  Attorney Fernandez Martinez has considerable experience litigating IDEA and disability cases.  Three other attorneys worked on the case who are or were associates in the firm and billed at an hourly rate of $125.  One paralegal worked on the case, and her time is billed at an hourly rate of $75.

In support of their fee request, the plaintiffs filed an affidavit by Attorney Rafael Ojeda Colon who states that he has experience in the courts of Puerto Rico and the United States District Court in Puerto Rico and that the prevailing hourly rates in federal court range from $150 to $350 depending on the complexity of the case and the attorney's experience.  Attorney Ojeda Colon also states that an hourly rate of $125 for an

associate in a firm such as Delgado & Fernandez would be below a reasonable hourly rate. The plaintiffs refer the court to a recent decision issued in the District of Puerto Rico awarding attorneys' fees under 42 U.S.C. § 1988 in which the court found hourly rates between $300 and $120 to be reasonable, depending on the attorney who did the work and whether the time was spent in or out of court. Reyes Canada v. Rey Hernandez, 411 F. Supp. 2d 53, 56 (D.P.R. 2006). Based on the submissions in support of their motion, the plaintiffs have shown that the hourly rates charged by their attorneys for their work on this case are well within the range of reasonable rates charged by attorneys for similar work in Puerto Rico.

The total number of hours the plaintiffs' attorneys spent on this case is 170.75, over a little more than two years, and the amount billed for the attorneys' services is $22,712.50. The court has reviewed the entries in the itemized billing statement and has not found time that should be excluded as duplicative, excessive, non-productive, or otherwise not compensable. See, e.g., Gay Officers Action League, 247 F.3d at 295-99; Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 116 (1st Cir. 2001); Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). Therefore, the time spent was reasonable.

The Department does not challenge either the amount of time

spent or the hourly rates charged by the plaintiffs' attorneys. The plaintiffs are awarded the full amount of the attorneys' fees for which they submitted billing records, which is $22,712.50.

H.   Expenses and Costs

The plaintiffs also seek reimbursement for costs and expenses incurred in the course of this case.  The IDEA does not itemize what may be included in an award of costs, and therefore 28 U.S.C. § 1920 provides the governing standard for assessing costs under the IDEA.  Arlington Cent. Sch. Dist., 126 S. Ct. at 2460.  Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Non-attorney expert witness fees for services in an IDEA case are not included in costs.  Arlington Cent. Sch. Dist., 126 S. Ct. at 2459-60.

In addition to costs allowed under § 1920, reasonable and

necessary expenses incurred by attorneys in the course of representing prevailing parties may be reimbursed as part of an attorneys' fees award.  Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).  Expenses for computer-assisted research, such as Westlaw, may be recovered if the firm paid a third-party provider for the service and the firm regularly bills clients for that expense.  Attrezzi, LLC v. Maytag, 436 F.3d 32, 43 (1st Cir. 2006); Invessys, Inc. v. McGraw-Hill Cos., Ltd., 369 F.3d 16, 23 (1st Cir. 2004).  Other reasonable out-of-pocket expenses that attorneys ordinarily bill to their clients, such as for travel, long distance telephone calls, postage, and parking, may be included in an award.  Id.; Palmigiano, 707 F.2d at 637; Radford Trust v. First Unum Life Inc. Co. of Am., 399 F. Supp. 2d 3, 19-20 (D. Mass. 2005).

   The plaintiffs improperly combined their attorneys' out-of-pocket expenses for computer-assisted research, postage, long distance telephone calls, and facsimile transmissions with items that are properly assessed as costs.  Although costs and expenses should have been presented separately, both are allowable.  In addition, the Department has not objected to any of the costs or expenses for which the plaintiffs seek reimbursement.  Therefore, the total amount of costs and expenses that is supported by the itemized billing record, $3,710.28, is allowed.

I.  Total Amount of Fees, Costs, and Expenses

The plaintiffs requested a total award of $37,647.78 in attorneys' fees, expenses, and costs. The billing statement that the plaintiffs filed in support of their request, however, shows a total for fees and expenses of only $26,422.78, which is $11,225 less than the amount they requested. They have provided no explanation for the discrepancy.

"In order to recover fees, attorneys must submit a full and precise accounting of their time, including specific information about number of hours, dates, and the nature of the work performed." Deary v. City of Gloucester, 9 F.3d 191, 197-98 (1st Cir. 1993). In this case, the plaintiffs have properly supported their request for fees, expenses, and costs to the extent shown by the billing records they filed. To the extent they seek an award that is greater than that amount, their request is not properly supported and is denied.

## Conclusion

For the foregoing reasons, the plaintiffs' motion for a default judgment (document no. 23) is granted except that the amount of attorneys' fees, expenses, and costs is reduced to the amount for which the plaintiffs submitted billing records.

The Puerto Rico Department of Education shall immediately reimburse the plaintiffs for the following:

$22,500 – tuition for Centro de Intervencion Temprana, Inc.

$630 – psychological services

$160 – speech therapy

$2000 – tuition for summer program at IMEI

$3,536.69 – interest on loan

$130 – occupational therapy evaluation

$26,422.78 – attorneys' fees and costs

which constitutes a default judgment in the amount of **$55,379.47.**

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Joseph A. DiClerico, Jr.
　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　　(Sitting by designation.)

September 15, 2006

cc:  Alfredo Fernandez-Martinez, Esquire
　　　Kristine Burgos Santiago, Esquire
　　　USDC-PR, Clerk